IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**KAREN BATSON-LOWRY**
137 Parkview Avenue
Langhorne, PA 19047

*Plaintiff,*

vs.

**COUNTY OF BUCKS**
55 East Court Street
Doylestown, PA 18901

*Defendant.*

CIVIL ACTION

CASE NO_____

**JURY TRIAL DEMANDED**

CIVIL ACTION COMPLAINT

Plaintiff, Karen Baston-Lowry (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

I. **Introduction**

1.      Plaintiff has initiated this action to redress violations by Defendant, County of Bucks (hereinafter "Defendant") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101) and the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"),[1] and Pennsylvania common law. Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

II. **Jurisdiction and Venue**

2.      This Court may properly maintain personal jurisdiction over Defendant because

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Her PHRA claims will substantially mirror her ADA and ADEA claims.

1

Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3.      This action is initiated pursuant to a federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      As to any claims involving statutes requiring administrative exhaustion, including but not limited to the ADA, Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff received a right-to-sue letter from the EEOC on April 8, 2026. Plaintiff thus also timely files the instant lawsuit within 90 days of receiving said right-to-sue ("RTS") letter. In all aspects, Plaintiff has properly exhausted his federal administrative remedies.

### III.    Parties

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult woman who resides at the above-captioned address.

8.      Defendant is a government body containing 54 distinct municipalities in Southeastern Pennsylvania.

9.    At all times relevant herein, Defendant acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.    Factual Background

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff is a 56-year-old female.

12.    Plaintiff was hired by Defendant as a Clerk Typist II around June of 2020 and retained this title for approximately six years until the date of her unlawful termination on March 6, 2026.

13.    Plaintiff worked primarily in Defendant's Children and Youth Social Services Agency.

14.    Plaintiff initially worked under the direct supervision of Continuous Quality Improvement Manager Tammy O'Donnell (*hereinafter* "O'Donnell") from the beginning of her employment until approximately late 2024.

15.    In late 2024, began working more directly under Administrative Officers Mike DeAngelo (*hereinafter* "DeAngelo") and Michelle Fronheiser (*hereinafter* "Fronheiser"). O'Donnell was still involved in Plaintiff's management, but in a less direct supervisory role.

16.    Plaintiff's duties included, but were not limited to, performing background checks (which she was certified by the state police to perform) on individuals, reviewing Department of Public Welfare files to verify or check information on individuals, handling case files and court work, processing case notes. Oftentimes, these files contained sensitive or confidential information.

3

17.     Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to a rotator cuff injury, frozen shoulder, a broken foot, diabetes, and other related medical conditions.

18.     Plaintiff's disabilities, at times, limit her ability to perform some daily life activities, such as carrying heavy objects, moving her shoulder for extended periods of time and while under pressure, and difficulty ascending and descending stairs.

19.     Despite Plaintiff's aforesaid health conditions and limitations, she was able to perform the essential functions of her position; however, she (at times) required some reasonable medical accommodations (discussed further *infra*).

20.     In or around mid-2024, Plaintiff submitted medical documentation from her treating physician to O'Donnell, which restricted repetitive shoulder movements due to substantial pain, physical limitations, and reduced mobility as a result of her rotator cuff and frozen shoulder disabilities.

21.     This request for an accommodation was repeatedly ignored by O'Donnell, and O'Donnell completely failed to engage in the interactive process with Plaintiff.

22.     Instead of accommodating Plaintiff, O'Donnell instead began to treat Plaintiff poorly as a result of her disabilities and requested accommodations, as well as because of her age.

23.     For example, around the time Plaintiff began discussing her disabilities and need for accommodations, O'Donnell began to subject Plaintiff to the following examples of discrimination and retaliation (not intended to be an exhaustive list):

      a.     O'Donnell made snide and condescending comments directed at Plaintiff;

      b.     O'Donnell frequently gave dirty looks and glances to Plaintiff;

      c.     O'Donnell exhibited a hyper fixation on Plaintiff's work as opposed to her younger, non-disabled coworkers, in an attempt to nitpick her and find perceived errors;

d.    O'Donnell spoke to Plaintiff in a condescending tone when discussing work, frequently implying that Plaintiff was either unable or ill equipped to complete her work due to her age and medical conditions.

24.    Plaintiff directly complained to O'Donnell about her treatment, informing her Plaintiff believed O'Donnell had a problem with her "because of [her] health and age."

25.    Beginning in or around October 2024, Plaintiff sought assistance from Defendant's Human Resources ("HR") Department regarding O'Donnell's failure to acknowledge or accommodate Plaintiff's reasonable accommodation request.

26.    At the same time, Plaintiff notified Defendant's HR of O'Donnell's bullying, harassment, and retaliatory conduct as a result of Plaintiff's age and medical conditions and provided the examples outlined *supra.*.

27.    As a result of O'Donnell's discrimination, retaliation, and failure to accommodation prompted Plaintiff to formally request O'Donnell be removed her direct supervision in or around November 2024.

28.    As a result, in late 2024, Plaintiff's day-to-day management did shift from O'Donnell to DeAngelo and Fronheiser, but O'Donnell remained in general management role.

**– Worker's Compensation Injury -**

29.    On or about June 16, 2025, Plaintiff sustained a fractured foot in several places while descending the steps in the workplace.

30.    Plaintiff's injury was severe and required multiple visits with physicians as well as months of recovering and physical therapy after her initial diagnosis.

31.    Despite Plaintiff's aforesaid workplace injuries, she was still able to perform the essential functions of her position; however, she (at times) required some reasonable medical accommodations including but not limited to limited use of steps, mobility limitations, and the need to leave work early for physical therapy and/or physician's appointments on an infrequent

5

basis.

32. Plaintiff provided a physician's note to Defendant's management which supported her mobility restrictions and stated she can only use steps in a *limited capacity*. To be clear, Defendant's physician's office did not outright ban Plaintiff from ascending or descending steps.

33. Plaintiff also initiated a worker's compensation claim through Defendant's worker's compensation insurance.

34. Plaintiff was *immediately* treated like a liability after bringing her injury and need for reasonable accommodations to Defendant's management's attention.

35. In one instance, Plaintiff was issued verbal discipline by Fronheiser for using the stairs in **any** capacity, despite the fact that management (including Fronheiser) was provided with Plaintiff's doctor's note which stated she *could* ascend and descend steps – just in a limited capacity.

36. From this time until her eventual termination, Plaintiff continued to be subjected to hostility from management including Fronheiser and O'Donnell who were condescending and outright nasty to Plaintiff, overly scrutinizing anything Plaintiff did to uncover alleged issues to create feigned reasons to discipline her, and treated her much more harshly than younger and non-disabled employees.

37. Plaintiff raised complaints of discrimination and retaliation to DeAngelo, who verbally agreed with Plaintiff, stating "they [O'Donnell and upper management] really have it out for you," and appeared to exhibit empathy.

38. Despite attempting to show empathy, DeAngelo did nothing to stop the discrimination and harassment, as he simply placated management and took no remedial action.

39. Within a few months of her worker's compensation injury, requested

accommodations, and complaints of the hostile work environment to which she was being subjected, Plaintiff was abruptly terminated on or around March 6, 2026 for completely false and pretextual reasons.

40.     Defendant's cited reason for Plaintiff's termination was an alleged "HIPAA violation" that purportedly occurred in February 2026, multiple weeks prior to her termination.

41.     Prior to her termination, Plaintiff never received any written warnings, verbal warnings, or notification of any kind about any sort of alleged HIPAA violation that may have occurred, despite Defendant utilizing a progressive disciplinary process.

42.     As discussed *supra*, Plaintiff handled a high volume of cases and files during her time with Defendant, some of which contained sensitive material.

43.     Even so, Plaintiff did not violate HIPAA at any point and did not see any confidential information she was not permitted to view.

44.     In the termination notice provided to Plaintiff, Defendant asserts Plaintiff "attempted to access the confidential record of a co-worker on 2/6/26," and Plaintiff was informed at termination she should have reported a HIPPA matter to Defendant's compliance person.

45.     This is false and pretextual. In relation to any events that occurred on February 6, 2026:

    a.     Another employee name Patricia McGovern (*hereinafter* "McGovern") gave Plaintiff a sticky note with three (3) case numbers on the note. McGovern asked Plaintiff to check and see if Plaintiff had those files. This was *a common way* of communication and verification internally, which McGovern has confirmed under oath. *See* McGovern Sworn Declaration, attached hereto as "Exhibit A."

    b.     Plaintiff was able to discern from the sticky note after checking that two (2) of the cases were Plaintiff's assigned cases and one (1) case was not her assigned case. Defendant's system did not permit Plaintiff to access the third case (that was not hers). A message came up indicating Plaintiff was not authorized to access the last file. Such messages occasionally occurred when accessing parts of Defendant's system for different reasons. Plaintiff

did not see any information or any documents from this case file.

c.   McGovern was identified by management as the person to talk with concerning any files or file questions in Plaintiff's work group. Even in Plaintiff's termination communication, O'Donnell admitted she was the go-to-file-person – so the interaction of O'Donnell giving Plaintiff a sticky note in relation to locating files was extremely normal, commonplace, and occurred **all the time**.

46.   Defendant's feigned reason for Plaintiff's termination is so confusing and false for multiple reasons, including but not limited to:

(1) communications or case assistance about files was very common, and Plaintiff simply typed in the numbers she was given by the go-to file person (as confirmed by McGovern herself [Exhibit A]);

(2) Plaintiff accessed many files all the time (as that was her job);

(3) Plaintiff did not actually see anything in any file that was not hers (and therefore there could be no possible "HIPAA violation");

(4) nothing that occurred seemed concerning or out of the ordinary to Plaintiff as the department always works at a very fast pace and at a high volume and coworkers may write down the wrong case file or give me a note with a file that is not mine;

(5) there was no policy Plaintiff was ever made aware of related to Defendant's accusation;

(6) there was no designated person for compliance that Plaintiff would have even known to bring the fact that she was denied access to a file to. If a policy was shared, Plaintiff would have happily obliged moving forward.

(7) no HIPAA violation actually occurred since there was no disclosure and Plaintiff did not see any information in the file that was not hers;

(8) it is unclear whether an employee seeing case files (a routine part of Plaintiff's job) would even possibly be considered a HIPAA violation (even if Plaintiff *had* accessed the file [which she had not]);

(9) Plaintiff had a stellar work record with respect to her performance on files, had never been warned or disciplined, and to be terminated for something so unbelievably insignificant without a warning illustrates immense pretext.

47.   Based on the forgoing, Plaintiff believes that she was subject to a hostile work

8

environment, disciplined, and ultimately terminated by Defendant for discriminatory and/or retaliatory purposes under the ADEA, ADA, and Pennsylvania common law.

**COUNT I**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1]Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

48.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.    Plaintiff suffered from qualifying health conditions under the ADA which, at times, limited her ability to perform some daily life activities (discussed *supra*).

50.    After apprising Defendant of her aforesaid health conditions and limitations and following her requests for reasonable medical accommodations under the ADA, Plaintiff was subjected to discriminatory and retaliatory treatment (in response to her requests for reasonable medical accommodations) by Defendant.

51.    Plaintiff was belittled, talked down to, and her requests were reasonable accommodation ignored before ultimately being terminated because of her health conditions.

52.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and ultimately terminated based on her actual/perceived/record of disability and/or in retaliation for requesting reasonable accommodations under the ADA.

**COUNT II**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**([1] Age Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

53.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54.    Plaintiff is 56 years old.

55.    Plaintiff was subjected to a hostile work environment because of her age through

9

disparate treatment and discriminatory comments.

56. While Plaintiff complained of Defendant's violations under the ADEA, her concerns were never properly investigated or remedied. Instead, she was subjected to retaliatory action, a hostile work environment, and ultimately terminated.

57. Plaintiff believes and avers that her age was a motivating or determinative factor in Defendant's decisions to:

     i. Subject her to a hostile work environment;

     ii. Subject her to disparate treatment;

     iii. Wrongfully suspend Plaintiff's employment; and

     iv. Wrongfully terminate Plaintiff's employment.

58. Plaintiff also believes and therefore avers that because of her complaints of age discrimination, Defendant made the following decisions:

     i. Subject her to a hostile work environment;

     ii. Subject her to disparate treatment;

     iii. Wrongfully suspend Plaintiff's employment; and

     iv. Wrongfully terminate Plaintiff's employment.

59. Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of the ADEA.

**COUNT III**
**<u>Common-Law Wrongful Discharge</u>**
**(Public Policy Violation)**

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. Upon information and belief, Plaintiff was terminated in substantial part for suffering work related injuries and seeking worker's compensation benefits (as discussed *supra*).

62.    It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

63.    The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and her pretextual termination creates an inference that her termination was in retaliation for making such claims.

64.    These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendant are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.    Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
Allison A. Barker, Esq. (326837)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
abarker@karpf-law.com

Dated: June 30, 2026

12

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Karen Batson-Lowry | : | CIVIL ACTION |
| v. | : | |
| County of Bucks | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 6/30/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1.  Does this case involve property included in an earlier numbered suit?    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.**  ***Federal Question Cases:***

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Wage and Hour Class Action/Collective Action
☐  6.  Patent
☐  7.  Copyright/Trademark
☐  8.  Employment
☐  9.  Labor-Management Relations
☒  10.  Civil Rights
☐  11.  Habeas Corpus
☐  12.  Securities Cases
☐  13.  Social Security Review Cases
☐  14.  Qui Tam Cases
☐  15.  Cases Seeking Systemic Relief  **\*see certification below\***
☐  16.  All Other Federal Question Cases. *(Please specify)*:_____

**B.**  ***Diversity Jurisdiction Cases:***

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify)*:_____
☐  7.  Products Liability
☐  8.  All Other Diversity Cases:  *(Please specify)*_____
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BATSON-LOWRY, KAREN

**DEFENDANTS**
COUNTY OF BUCKS

**(b)** County of Residence of First Listed Plaintiff   Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); ADEA (29USC621)

Brief description of cause:
Violations of the ADA, ADEA, PHRA and PA Common Law.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  6/30/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____