**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAREN BATSON-LOWRY,<br>*Plaintiff,*<br>v.<br>COUNTY OF BUCKS,<br>*Defendant.* | CIVIL ACTION<br>NO. 26-4536 |

**Pappert, J.** **October 30, 2026**

**MEMORANDUM**

Karen Batson-Lowry, a 56-year-old female, was employed by Bucks County for almost six years as a clerk typist. After her termination in March 2026, she sued alleging discrimination, retaliation and hostile work environment under the Americans with Disabilities Act and the Age Discrimination in Employment Act. She also asserted an ADA failure to accommodate claim. Bucks County moved to dismiss all claims and to strike the request for punitive damages. The Court grants the motion in part and denies it in part and strikes the punitive damages demand.

I

Batson-Lowry is a 56-year-old female who Bucks County hired in June 2020. (Am. Compl. ¶¶ 11–13.) She worked as a "Clerk Typist II" for the Children and Youth Social Services Agency until she was fired on March 6, 2026. (*Id.*) In mid-2024 Batson-Lowry requested accommodations due to her "rotator cuff and frozen shoulder disabilities." (*Id.* ¶ 22.) As part of this request to her supervisor, Tammy O'Donnell, Batson-Lowry provided medical documentation from her treating physician. (*Id.*) O'Donnell "repeatedly ignored" her request for accommodation and instead began to

treat her poorly. (*Id.* ¶¶ 23–24.) Specifically, O'Donnell made snide and condescending comments, gave dirty looks, hyperfixated on her work, and frequently implied Batson-Lowry was "unable or ill equipped to complete her work due to her age and medical conditions." (*Id.* ¶ 25.)

Batson-Lowry complained to O'Donnell about her treatment, before reporting O'Donnell to HR for "bullying, harassment, and retaliatory conduct" in October 2024. (*Id.* ¶¶ 26–28.) In November 2024, Batson-Lowry requested O'Donnell be removed as her direct supervisor. (*Id.* ¶ 30.) Bucks County accommodated the request and Batson-Lowry was thereafter supervised by Mike DeAngelo and Michelle Fronheiser. (*Id.* ¶ 31)

On June 16, 2025, Batson-Lowry fractured her foot while walking down the stairs in her workplace. (*Id.* ¶ 32.) She provided a doctor's note to her managers which supported mobility restrictions and noted she could only "use steps in a *limited capacity*." (*Id.* ¶ 35 (emphasis in original).) Following this, Batson-Lowry was "treated like a liability" and subjected to "hostility from management" as Fronheiser and O'Donnell were condescending and overly scrutinizing. (*Id.* ¶¶ 37, 39.) Batson-Lowry then complained to DeAngelo that she was being discriminated and retaliated against. (*Id.* ¶ 40.) She was fired on March 6, 2026, for a purported HIPAA violation. (*Id.* ¶¶ 42–43.)

II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the court can infer "that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration omitted) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the court must dismiss them. *Twombly*, 550 U.S. at 570.

## III

### A

To survive a motion to dismiss, Batson-Lowry's ADEA age discrimination claim must allege facts that, if true, would establish "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position he held; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination." *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 681 (E.D. Pa. 2017). Her ADA disability discrimination claim must allege facts that she

is "(1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on his disability." *Id.* at 682.

Batson-Lowry has failed to allege facts which "give rise to an inference of intentional [age] discrimination." *Drummer*, 286 F. Supp. 3d at 681. The only allegations relating to discrimination based on age are rooted in her own belief, not what anyone else said or did. (Am. Compl. ¶ 25 (stating O'Donnell "implied" Batson-Lowry was unable to complete her work due to age), Am. Compl. ¶ 60 (stating "Plaintiff believes and avers that her age was a motivating or determinative factor").) *See Pina v. Henkel Corp.*, No. 07-4048, 2008 WL 819901, at *4 (Mar. 26, 2008) (holding plaintiff's ADEA claim cannot survive a motion to dismiss because "there are simply no facts alleged in the Complaint that give rise to anything more than pure speculation that Plaintiff was fired on account of his age").

To make out a *prima facie* case of discrimination under the ADA, Batson-Lowry must plausibly allege that she suffered an adverse employment decision "as a result of the discrimination based on [her] disability." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017). Batson-Lowry broke her foot at work in June 2025. (Am. Compl. ¶ 32.) She subsequently provided a physician's note supporting mobility restrictions. (*Id.* ¶ 35.) However, she was not fired until March 2026. In the meantime, she alleges she was "subjected to hostility from management," (*Id.* ¶ 39), yet none of the allegations of hostility relate to her disability. To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 546. Without more, the nine-month

gap between her notification of her disability and her termination, does not give rise to an "inference of discrimination." *Thomas v. Brandywine Hosp. LLC*, No. 21-3288, 2021 WL 5906350, at *5 (E.D. Pa. Dec. 14, 2021) (granting motion to dismiss where plaintiff "does not connect [her treatment] in any way to her disability" outside of "conclusory allegations that she was subjected to 'disparate treatment as a result of her health conditions'").

B

"The *prima facie* case for retaliation under the ADEA and ADA are the same." *Gavurnik v. Home Properties, L.P.*, 227 F. Supp. 3d 410, 420 (E.D. Pa. 2017). A plaintiff must allege facts that "(1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse reaction." *Glanzman v. Metro. Mgmt. Corp.,* 391 F.3d 506, 515–16 (3d Cir. 2004).

1

Protected activities under the ADEA include "formal charges of discrimination as well as informal protests of discriminatory employment practices." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (internal quotation marks omitted). Protected conduct does not, however, include mere complaints "about unfair treatment" that fail to reference "a protected characteristic as the basis for the unfair treatment." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014). Rather, the alleged discrimination must be regarding age, the characteristic protected by the ADEA. *Barber*, 68 F.3d at 702. For a complaint to constitute protected activity under

the ADEA, a "plaintiff must have a good faith, reasonable belief that an ADEA-violation occurred." *Zielinksi v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 354 (E.D. Pa. 2012).

Batson-Lowry alleges that in mid-2024 her supervisor at the time, O'Donnell, began to treat her poorly "because of her age." (Am. Compl. ¶ 24.) Following this, Batson-Lowry "directly complained to O'Donnell about her treatment" specifically that Batson-Lowry believed O'Donnell had a problem with her "health and age." (*Id.* ¶ 26.) She then told the County's HR of "O'Donnell's bullying, harassment, and retaliatory conduct as a result of Plaintiff's age and medical conditions." (*Id.* ¶ 28.) In late 2024, O'Donnell was removed as Batson-Lowry's direct supervisor. (*Id.* ¶ 31.) Batson-Lowry then alleges that she continued to be "treated more harshly than younger and non-disabled employees." (*Id.* ¶ 39.) She "raised complaints of discrimination and retaliation to DeAngelo" who "took no remedial action." (*Id.* ¶¶ 40–41.) Batson-Lowry provides no timeline for this complaint of "discrimination" but states that "[w]ithin a few months" of her complaint she was fired on March 6, 2026. (*Id.* ¶ 42.)

Under prong three, Batson-Lowry must allege facts which could show a causal connection between the protected activity and the adverse action, yet none of her allegations connect her complaints of discrimination with her termination. To allege causation, a plaintiff may allege facts showing either "1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing; or (3) that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Whitehall Manor*, 899 F. Supp. 2d at 355. Batson-Lowry alleges no facts showing temporal proximity or a pattern of antagonism related to her alleged complaint of age discrimination. As her

discrimination claim fails, Batson-Lowry's retaliation claim under the ADEA also fails because she has not alleged facts showing a causal connection that would nudge the "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

2

Protected activity under the ADA is broader than under the ADEA, as it "includes retaliation against an employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). However, Batson-Lowry has not alleged facts sufficient to show the adverse action, her termination, was causally connected to her request for an accommodation or complaints of disability discrimination. Batson-Lowry alleges no concrete timeline for complaint of disability discrimination other than stating it came "[w]ithin a few months" of her termination. (Am. Compl. ¶ 42.) She also provides no timeline for her second request for accommodations, stemming from her fractured foot. Batson-Lowry alleges she made her second complaint of discrimination to her supervisor DeAngelo, yet any "hostility" came from Fronheiser and O'Donnell. (*Id.* ¶¶ 39, 40.) This again is insufficient to plausibly allege a "causal link" between her complaints of discrimination or request for accommodations and her termination. *Long v. Spalding Automotive Inc.*, 337 F. Supp. 3d 485, 492 (dismissing ADA retaliation claim when nine months passed between plaintiff's request for an accommodation and subsequent termination).

C

1

To state a claim for hostile work environment under the ADEA, a plaintiff must allege (1) she suffered intentional discrimination because of her age; (2) the harassment

was severe or pervasive; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a reasonable person in that position; and (5) respondeat superior liability. *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 503 (E.D. Pa. 2018). However, "offhanded comments and isolated incidents" are not sufficient to sustain a hostile work environment claim. *Magerr v. City of Philadelphia*, 2016 WL 1404156, at *11 (April 11, 2016) (quotations omitted). The anti-discrimination mandate "does not require a happy or even a civil workplace." *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017).

At most, Batson-Lowry alleges "offhanded comments and isolated incidents," and in any event she also fails to tie any alleged harassment to her age. "Discrimination in the form of a hostile work environment is only actionable when it is done 'because of' the plaintiff's membership in a protected class." *Zielinski v. Kimberly-Clark Corp.*, No. 15-3053, 2016 WL 3519709, at *9 (E.D. Pa. 2016). Batson-Lowry's only allegations relating to age in her Complaint come from her own beliefs, not what anyone else said or did. As such, she cannot tie any alleged harassment to her age.

2

Under the ADA, a plaintiff must show that (1) she is a qualified individual with a disability under the ADA, (2) she was subject to unwelcome harassment, (3) the harassment was based on her disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action." *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 646–47 (E.D. Pa.

2011). Bucks County argues Batson-Lowry does not plausibly allege that there was "severe or pervasive harassment." (Mot. to Dismiss at 16–17, Dkt. No. 13-1.)

In evaluating whether the harassment is sufficiently severe or pervasive, the court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Magerr*, 2016 WL 1404156 at *11 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The workplace must be "permeated with discriminatory intimidation, ridicule and insult." *Harris*, 510 U.S. at 21 (quotations omitted). Batson-Lowry's allegations of "snide and condescending comments," "dirty looks and glances," and "a hyper fixation" on her work in 2024 do not meet the "severe or pervasive" requirement for a hostile work environment claim. (Am. Compl. ¶ 25); *Magerr*, 2016 WL 1404156 at *11 (granting motion to dismiss where the allegations only describe "isolated incidents"). Batson-Lowry's allegations under the ADA similarly fail to meet the "severe or pervasive" requirement as under the ADEA.

D

Batson-Lowry also claims that Bucks County failed to accommodate her under the ADA. (Am. Compl. at 9.) She must allege that "(1) [Bucks County] knew about the employee's disability; (2) she asked for an accommodation or assistance; (3) [Bucks County] did not make a good-faith effort to accommodate the employee; and (4) she could have been accommodated." *Pelphrey-Weigand v. Res. for Hum. Dev., Inc.*, 818 F. Supp. 3d 685, 701 (E.D. Pa. 2026).

Batson-Lowry contends that in 2024 she "submitted medical documentation from her treating physician to O'Donnell, which restricted repetitive shoulder movements due to substantial pain, physical limitations, and reduced mobility as a result of her rotator cuff and frozen shoulder disabilities." (Am. Compl. ¶ 22.) She states that this "request for an accommodation" was "repeatedly ignored." (*Id.* ¶ 23.) In 2025, Batson-Lowry broke her foot at work. (*Id.* ¶ 32.) Following this, she was still able to perform her job but required "reasonable medical accommodations including but not limited to limited use of steps, mobility limitations, and the need to leave work early for physical therapy." (*Id.* ¶ 34.) However, Batson-Lowry does not allege that she was denied any accommodation following this 2025 request. In fact, she alleges that she was told not to use the stairs. (*Id.* ¶ 38.)

Bucks County argues the Complaint "does not identify a specific accommodation requested and denied." (Mot. to Dismiss at 14–15, Dkt. No. 13-1.) While that may be true for the 2025 request, the 2024 accommodation request is sufficient. A "request for accommodation does not have to be formal, in writing, or include the magic words 'reasonable accommodation.'" *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 436 (E.D. Pa. 2023). Batson-Lowry "submitted medical documentation" indicating her physical limitations, which she alleges was then "repeatedly ignored." (Am. Compl. ¶¶ 22, 23.) Under the ADA, an employer has a "duty to engage, in good faith, in an 'interactive process' with the employee" as part of the accommodation process. *Hanafy*, 669 F. Supp. 3d at 435. Batson-Lowry's allegations, taken as true, indicate Bucks County took no steps to engage in an interactive process following her request for accommodations in 2024.

IV

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay, prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Batson-Lowry, already having amended her complaint once, has alleged no facts to connect her age to any discriminatory behavior, nor could her allegations plausibly show the severity or pervasiveness required to state a hostile work environment claim. As such, it would be futile for her to amend those claims. However, there are facts Batson-Lowry may be able to allege to save her discrimination and retaliation claims under the ADA, so she will be given a final opportunity to do so.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.